IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MICHAEL CUSANI,

                    Plaintiff,                  CV-06-331-ST

        v.                           OPINION AND ORDER

MICHAEL J. ASTRUE,
Commissioner, Social Security Administration,

                    Defendant.

STEWART, Magistrate Judge:

## **INTRODUCTION**

Plaintiff, Michael Cusani ("Cusani"), brings this action pursuant to 42 USC § 405(g),

seeking judicial review of a final decision of the Commissioner of Social Security[1] denying his

application for Supplemental Security Income ("SSI") benefits under Title XVI of the Social

---

[1] On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security.  He is substituted as the defendant in this action pursuant to FRCP 25(d)(1) and 20 USC § 405(g).

1 - OPINION AND ORDER

Security Act, 42 USC §§ 1381-83f. The parties have consented to allow a Magistrate Judge to

enter final orders and judgment in this case in accordance with FRCP 73 and 28 USC § 636(c).

For the reasons that follow, the Commissioner's decision is affirmed.

## BACKGROUND

Cusani was born in 1951.[2] Tr. 74.[3] At the time of the ALJ's decision, he was 54 years

old, had a high school education, and no past relevant work experience. Tr. 24, 93, 707-09.

Cusani has struggled for many years with alcohol dependence and has been unemployed since

1997. Tr. 129, 238, 240-41. Cusani has been homeless since September 2001 and has

undergone multiple admissions for detoxification. Tr. 122, 238-39.

Cusani protectively filed an application for SSI benefits on March 5, 2002, alleging

disability beginning January 1, 2002, due to a combination of physical and mental impairments

including seizures, depression, panic attacks, abdominal and leg pain, and difficulty using his

right thumb. Tr. 74, 94-95, 112-28,

Cusani's application was denied initially and on reconsideration. Tr. 59-70. Cusani

requested a hearing (Tr. 71), which was held before Administrative Law Judge ("ALJ") William

L. Stewart on May 13, 2004. The ALJ denied Cusani's request for benefits in a written decision

dated June 22, 2004. Tr. 368-74. The Appeals Council subsequently granted Cusani's request

for review and determined that the ALJ's conclusion that Cusani had moderate difficulties in

maintaining social functioning and concentration, persistence or pace was inconsistent with the

description of the jobs in the Dictionary of Occupational Titles ("DOT") that the ALJ found

---

[2] In accordance with Local Rule 10.3(a)(3), only the relevant year is given.

[3] Citations are to the page(s) indicated in the official transcript of the record filed with the Commissioner's Answer.

Cusani could perform (as a cashier II, mail clerk, and ticket seller). Tr. 380. As a result, the Appeals Council remanded the case in order for the ALJ to obtain supplemental evidence from a vocational expert to resolve the apparent conflict and to associate Cusani's later filed, August 20, 2004, claim with the March 2002 claim. Tr. 379-81, 703.

Cusani appeared and testified at subsequent hearings held on May 6, 2005, and December 12, 2005 (telephonic). Tr. 700-25. On December 27, 2005, the ALJ issued a second decision, again denying Cusani's application. Tr. 15-27. That decision became the final order of the Commissioner on February 15, 2006, when the Appeals Council denied Cusani's request for review. Tr. 8-11; 20 CFR § 416.1481. Cusani now seeks judicial review of the Commissioner's decision.

## ANALYSIS

### I. Disability Analysis

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of no less than 12 months[.]" 42 USC § 423(d)(1)(A). The initial burden of proof rests upon the claimant to establish his or her disability. *Roberts v. Shalala*, 66 F3d 179, 182 (9th Cir 1995), *cert denied*, 517 US 1122 (1996) (citations omitted). The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 CFR §§ 404.1520, 416.920. Below is a summary of the five steps, which also are described in *Tackett v. Apfel*, 180 F3d 1094, 1098-99 (9th Cir 1999):

At step one, the Commissioner determines whether the claimant is engaged in substantial gainful activity.  If so, the claimant is not disabled.  If not, then the Commissioner proceeds to step two.  20 CFR § 416.920(b).

At step two, the Commissioner determines whether the claimant has one or more severe impairments.  If not, the claimant is not disabled.  If the claimant has a severe impairment, then the Commissioner proceeds to step three.  20 CFR § 416.920(c).

At step three, the Commissioner determines whether the claimant's impairment "meets or equals" one of the impairments listed in the SSA regulations, 20 CFR Part 404, Subpart P, Appendix 1 ("Listing of Impairments").  If so, the claimant is disabled.  If the impairment does not meet or equal one of the listed impairments, then the Commissioner proceeds to step four. 20 CFR § 416.920(d).

If the adjudication proceeds beyond step three, the Commissioner must determine the claimant's residual functional capacity ("RFC").  The RFC is an assessment of the sustained work-related activities the claimant can still do on a regular and continuing basis, despite the limitations imposed by the impairments.  20 CFR §§ 416.920(e), 416.945; Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996).

At step four, the Commissioner determines whether the claimant is able to perform work he or she has done in the past.  If so, the claimant is not disabled.  If the claimant demonstrates that he or she cannot perform work done in the past, the Commissioner proceeds to step five. 20 CFR § 416.920(e).

Finally, at step five, the Commissioner determines whether the claimant is able to do any other work.  If not, the claimant is disabled.  If the Commissioner finds the claimant is able to do

4 - OPINION AND ORDER

other work, the Commissioner must show a significant number of jobs exist in the national economy that the claimant can do. The Commissioner may satisfy this burden through the testimony of a vocational expert ("VE") or by reference to the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2. If the Commissioner demonstrates a significant number of jobs exist in the national economy that the claimant can do, then the claimant is not disabled. If the Commissioner does not meet this burden, the claimant is disabled. 20 CFR §§ 404.1566, 416.920(f).

At steps one through four, the burden of proof is on the claimant. *Tackett*, 180 F3d at 1098. However, at step five, the burden shifts to the Commissioner to show that the claimant can perform jobs that exist in significant numbers in the national economy. *Id.*

## THE ALJ'S FINDINGS

At step one, the ALJ determined that Cusani had not worked since 1997 and, therefore, had not worked since the alleged onset date of February 3, 2002. Tr. 16.

At step two, the ALJ found that Cusani's chronic alcohol dependence was a severe impairment which had precipitated a history of alcohol withdrawals and seizures, delirium tremens, pancreatitis, gastritis, and a variety of injuries resulting from falls while intoxicated. Tr. 20. The ALJ gave little weight to Cusani's claim that he had stopped drinking alcohol and determined that he would not be disabled if he stopped drinking. Tr. 20-21. The ALJ also found that, apart from his alcohol dependence, Cusani suffers from Adjustment Disorder with a depressed mood. Tr. 21.

At step three, the ALJ evaluated Cusani's ability to handle the activities of daily living, functioning in a social setting, concentration, persistence, and pace at work-related job tasks, and

whether he had experienced any episodes of decompensation.  Tr. 21.  After doing so, the ALJ determined that Cusani's mental impairment does not meet or medically equal any of the listed impairments.  Tr. 21-22.

At step four, the ALJ found that Cusani retains the residual functional capacity to understand, remember, and carry out simple instructions and is capable of performing simple, routine tasks and simple work-related decisions necessary to function in unskilled work, but that his public contact should be limited to short and structured interactions.  Tr. 23-24.

Finally, at step five, based on the testimony of a vocational expert, the ALJ determined that Cusani can perform unskilled work as a cleanup worker (DOT 381.687-018), bagger (DOT 920.687-014), "tray setter" (or kitchen helper) (DOT 318.687-010), or housekeeper (DOT 323.687-014).

## <u>STANDARD OF REVIEW</u>

The Commissioner's decision must be affirmed if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole.  42 USC § 405(g); *see also Andrews v. Shalala*, 53 F3d 1035, 1039 (9th Cir 1995).  "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Andrews*, 53 F3d at 1039. The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision.  *Martinez v. Heckler*, 807 F2d 771, 772 (9th Cir 1986) (citations omitted).  The Commissioner's decision must be upheld, however, even if "the evidence is susceptible to more than one rational interpretation."  *Andrews*, 53 F3d at 1039-40.

///

6 - OPINION AND ORDER

## DISCUSSION

Cusani claims that the ALJ erred by finding at step five that he can perform jobs that exist in significant numbers in the national economy.  The VE testified that Cusani could perform work as a:  (1) cleanup worker, DOT 381.687-018;[4] bagger, DOT 920.687-014;[5] "tray setter" (kitchen helper), DOT 318.687-010;[6] or housekeeper, DOT 323.687-014.[7]  Cusani contends that those jobs are inconsistent with the limitations that he not perform work involving:

---

[4]  An industrial cleaner, DOT 381.687-018, performs the following work:
Keeps working areas in production departments of industrial establishment in clean and orderly condition, performing any combination of following duties: Transports raw materials and semifinished products or supplies between departments or buildings to supply machine tenders or operators with materials for processing, using handtruck. Arranges boxes, material, and handtrucks or other industrial equipment in neat and orderly manner. Cleans lint, dust, oil, and grease from machines, overhead pipes, and conveyors, using brushes, airhoses, or steam cleaner. Cleans screens and filters. Scrubs processing tanks and vats. Cleans floors, using water hose, and applies floor drier. Picks up reusable scrap for salvage and stores in containers. Performs other duties as described under CLEANER (any industry) I Master Title. May burn waste and clean incinerator. May pick up refuse from plant grounds and maintain area by cutting grass or shoveling snow. May operate industrial truck to transport materials within plant. May start pumps to force cleaning solution through production machinery, piping, or vats. May start pumps to lubricate machines. May be designated according to area cleaned as Alley Cleaner (textile); Can-Filling-Room Sweeper (beverage); Casting-And-Locker-Room Servicer (plastic-synth.); Ceiling Cleaner (any industry); Engine-Room Cleaner (any industry); Floor Cleaner (any industry); Overhead Cleaner (any industry).

[5]  A bagger (retail trade), DOT 920.687-014, performs the following work:
Bags groceries at grocery store: Packs grocery items in sacks or cartons, arranging heavy and bulky items at bottom of sack or carton. Verifies price of grocery item in question against price of items on stock shelf, upon request. Carries packed sacks, or places sacks in grocery cart, and pushes cart to customer's vehicle, upon request. Places groceries into customer's vehicle. Collects shopping carts from parking lot and surrounding areas and returns carts to store. Replaces cleaning and packing supplies used at grocery checkout counter. Returns grocery items left at checkout counter to specified stock shelves. Cleans work area and carries empty bottles and trash to storeroom. May price and place grocery articles on shelves. May assist in unloading delivery trucks.

[6]  A hotel and restaurant cook helper, DOT 318.687-010, performs the following work:
Performs any combination of following duties to maintain kitchen work areas and restaurant equipment and utensils in clean and orderly condition: Sweeps and mops floors. Washes worktables, walls, refrigerators, and meat blocks. Segregates and removes trash and garbage and places it in designated containers. Steam-cleans or hoses-out garbage cans. Sorts bottles, and breaks disposable ones in bottle-crushing machine. Washes pots, pans, and trays by hand. Scrapes food from dirty dishes and washes them by hand or places them in racks or on conveyor to dishwashing machine. Polishes silver, using burnishing-machine tumbler, chemical dip, buffing wheel, and hand cloth. Holds inverted glasses over revolving brushes to clean inside surfaces. Transfers supplies and equipment between storage and work areas by hand or by use of handtruck. Sets up banquet tables. Washes and peels vegetables, using knife or peeling machine. Loads or unloads trucks picking up or delivering supplies and food.

[7]  A housekeeper (any industry), DOT 323.687-014, performs the following work:
Cleans rooms and halls in commercial establishments, such as hotels, restaurants, clubs, beauty parlors, and dormitories, performing any combination of following duties: Sorts, counts, folds, marks, or carries linens. Makes beds. Replenishes supplies, such as drinking glasses and writing supplies. Checks wraps and renders personal assistance to patrons. Moves furniture, hangs drapes, and rolls carpets. Performs other duties as described under CLEANER (any industry) I Master Title. May be designated according to type of establishment cleaned as Beauty Parlor Cleaner (personal ser.); Motel Cleaner (hotel & rest.); or according to area cleaned as Sleeping Room Cleaner (hotel & rest.).

(1) "dangerous hazards;" (2) "continuous firm grasping utilizing the dominant right hand firm

for such forceful use as operating hand tools;" and (3) direct public contact.  Tr. 373, 710, 716.

However, this court finds no error in the ALJ's reliance on the VE testimony to conclude that

Cusani can perform those jobs.

In meeting his or her burden at step five, an ALJ may rely on VE testimony and is not

bound to accept as conclusive the exact job descriptions given in the DOT:

> Introduction of evidence of the characteristics of specific jobs
> available in the local area through the testimony of a vocational
> expert is appropriate, even though the job traits may vary from the
> way the job title is classified in the DOT.
>
> The Sixth Circuit recently held . . . that "the ALJ was within his
> rights to rely solely on the vocational expert's testimony.  The
> Social Security regulations do not require the Secretary or the
> expert to rely on classifications in the *Dictionary of Occupational
> Titles*.  In [the Sixth Circuit case], the expert described certain jobs
> as sedentary which the DOT classified as light or medium.
> Nevertheless, the court held that "the ALJ may rely on the
> testimony of the vocational expert even if it is inconsistent with the
> job descriptions set forth in the [DOT]."  We agree.

*Johnson v. Shalala*, 60 F3d 1428, 1435 (9th Cir 1995), quoting *Conn v. Sec'y of Health and

Human Serv.*, 51 F3d 607, 610 (6th Cir 1995).

Cusani contends that the restriction of not working around "dangerous hazards"

precludes him from working as a kitchen helper because the DOT description for that job

includes such things as using steam cleaners, bottle-crushing machines, burnishing-machine

tumblers, knives, and peeling machines, and hand trucks.  Similarly, Cusani contends that this

same limitation precludes work as a cleaner because the DOT description for that job indicates

that the worker may operate an industrial truck, a lawn mower, or a snow shoveler.  However,

the VE testified that the four positions she identified involve "no real hazards."  Tr. 719.  One

could arguably characterize the use of some of the types of equipment in the job description as potentially hazardous. However, it was not error to for the ALJ to agree with the VE's conclusion that these jobs involved "no real hazards," given that they do not involve the types of work the ALJ also characterized as "hazards," such as climbing of ladders, ropes, and scaffolds. Tr. 22, 551, 719.

Cusani also argues that the restriction of not using "continuous firm grasping utilizing the dominant right hand firm for such forceful use as operating hand tools" precludes work as a kitchen helper, bagger, cleaner, or housekeeper because each of DOT descriptions for those jobs cites some tasks that may involve use of the hands to operate various things such as brooms, hand cloths, vegetable peelers, knives, grocery carts, handtrucks, water hoses, and similar types of instruments or pieces of equipment. However, a searching review of the DOT descriptions reveals nothing inconsistent with the restriction of "continuous firm grasping" for "forceful use." Instead, the types of uses in the DOT descriptions either involve use of the hands to hold, arrange, carry items (grocery bags, boxes, garbage cans, linens and the like) or operate equipment such as a broom, hand truck, cleaning implements, and the like.

Finally, Cusani disputes that he can perform work as a bagger or housekeeper, given that he is limited to no direct public contact. The VE testified that "baggers of merchandise do not have interaction directly with the public." Tr. 719. The reference in the DOT description that a housekeeper "renders personal assistance to patrons" gives no indication as to the type of assistance that might be provided. It was not error for the ALJ to rely on the VE's testimony that Cusani's limitations, including the limitation that he have no direct public contact, did not preclude performance of this work.

9 - OPINION AND ORDER

In sum, Cusani has raised no challenges to the ALJ's conclusions with respect to steps one through four, and those conclusions are supported by substantial evidence in the record. A searching review of the record reveals that the challenges that Cusani raises to the ALJ's step five determination were adequately addressed by the VE's testimony and provide no basis on which to reverse the ALJ's decision.

## **ORDER**

Based on the foregoing, the decision of the Commissioner is AFFIRMED.

DATED this 21st day of March, 2007.

/s/ Janice M. Stewart_____
Janice M. Stewart
United States Magistrate Judge

10 - OPINION AND ORDER